UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **GLOBAL ENVIRONMENTAL RESTORATION INC** | **CASE NO. 6:20-CV-00547** |
| **VERSUS** | **JUDGE DOUGHTY** |
| **SHORE CORP** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is Motion to Transfer Under 28 U.S.C. §1404(a) or, Alternatively, Motion to Dismiss Under *Forum Non Conveniens* filed by Defendant, Shore Corporation. (Rec. Doc. 50). Plaintiff, Global Environmental Restoration, Inc. ("GER") opposed the Motion (Rec. Doc. 53), and Shore replied (Rec. Doc. 56). The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that Shore's Motion be denied.

## Factual Background

This lawsuit arises out of a failed business relationship between GER, wholesaler, retailer, and distributor of specialized disinfectant products, and Shore, a chemical manufacturer that manufactured GER's products. GER sued Shore for

breach of contract, conversion, and violations of the Louisiana Unfair Trade Practice after Shore allegedly failed to comply with their agreement to turn over formulas for certain products.

The underlying story begins in the 1990's with Shore and another chemical retail and distribution company, Amazing Concepts, regarding the manufacture, distribution, and sale of certain specialized disinfectants. GER purchased substantially all of Amazing's assets in December 2014, including Amazing's product purchase agreement with Shore. GER alleges that, because demand for these products exploded with the Covid-19 pandemic, Shore is attempting to get out of the parties' agreement and has withheld the product formulas despite GER having paid the purchase price. (Rec. Doc. 1. See also facts set forth in the Court's previous Report and Recommendation at Rec. Doc. 23, adopted at Rec. Doc. 26).

GER is a Louisiana company; Shore is Pennsylvania company; Amazing was a Michigan company. This Court previously denied Shore's Motion to Dismiss for Lack of Jurisdiction, finding that Shore was subject to this Court's jurisdiction and that venue was proper here. The Court declined to consider Shore's argument that the case should be transferred pursuant to the forum selection clauses within the various agreements, because the issue was not properly before the court as a motion to transfer. (Rec. Doc. 23, adopted at Rec. Doc. 26). In the instant Motion, Shore

now seeks to transfer the case to Pennsylvania pursuant to the forum selection clauses contained within the following relevant contracts.

- **October 28, 2013 Mutual Non-Disclosure Agreement ("NDA") between Shore and Amazing** regarding non-disclosure of the companies' proprietary information, such as product formulas, test data, etc. Shore and Amazing agreed that the NDA would be governed by Pennsylvania laws and that **"[a]ny legal action between the parties concerning or involving this Agreement shall be instituted only in the Commonwealth Court of Allegheny County, PA."** (Rec. Doc. 50-3, p. 3).

- **January 13, 2014 Manufacturing and Hold Harmless Agreement (MHHA) between Shore and Amazing** which formalized the parties' arrangements regarding the development, purchase, and sale of products (such as permissions to manufacture, label and ship products and obligations regarding EPA regulation compliance). The MHHA's choice of law/venue provision states: The provisions of this Agreement shall be governed by Pennsylvania law, without regard to any conflict of law provisions…**In the event any court of competent jurisdiction determines that any provision of this agreement is void or unenforceable, such finding shall affect the applicability or enforceability of the remaining provisions."** (Rec. Doc. 50-12, p. 2).

3

- **March 13, 2014 Product and Production Agreement and Purchase of Scheduled Products ("PPA") between Shore and Amazing**, wherein Shore transferred rights, title, and interest in the Scheduled Products to Amazing, and Amazing agreed to purchase same for a set price, payable over the following five years. The PPA explicitly acknowledges the separate October 2013 NDA and January 2014 MHHA and states that the provisions of those agreements "where relevant, are subject to the provisions of this Agreement and this Agreement to those provisions." (Rec. Doc. 50-4, p. 1). The PPA further states: "This Agreement will be interpreted under the laws of the Commonwealth of Pennsylvania." It is silent as to a choice of forum. (Rec. Doc. 50-4, p. 3).

- **December 12, 2014 Mutual Non-Disclosure Agreement between Shore and GER** containing a choice of law and venue provision identical to Shore and Amazing's October 2013 NDA. (Rec. Doc. 50-8, p. 3). This NDA was not signed by Shore. (Rec. Doc. 50-9).

- **December 12, 2014 Manufacturing and Hold Harmless Agreement (MHHA) between GER and Shore** containing identical language as the March 2014 Shore and Amazing MHHA quoted above. This MHHA was not signed by Shore. (Rec. Doc. 50-9).

- **April 2020 Terms and Conditions of Sale** ("TCS") attached to (or on the back of) a sales invoice for GER's purchase of certain products. The venue provision states: "**Venue for any and all disputes arising from the sale of goods by Seller [Shore] to Buyer [GER] or from Buyer's resale use of such goods[1] shall be resolved in a court of competent jurisdiction in Allegheny County, Pennsylvania…**" "PA law…shall apply to any dispute." (Rec. Doc. 50-5).

Shore and GER did not execute a separate PPA. Rather, GER contends that Amazing assigned its rights under the Shore PPA to GER, as evidenced by the initials of GER's and Amazing's presidents on the March 2014 PPA. See affidavit of GER president, Alan Campbell (Rec. Doc. 53-1, ¶7). Neither did Shore execute the December 2014 NDA and MHHA with GER. Nonetheless, the evidence indicates that Shore dealt with GER as Amazing's assignee. For instance, Shore's president, Stuart Hammerschmidt, and GER's president, Alan Campbell, agreed to a one-year extension of the PPA and thereafter attempted to negotiate a new contract. (See emails between Hammerschmidt and Campbell at Rec. Doc. 53-1, ¶12-20, referencing Rec. Doc. 35-6 and 35-7; 35-9 through 10).

---

[1] The invoice with attached TCS identifies GER as the buyer, which then apparently re-sold the products to a third-party company, Bactronix. See Rec. Doc. 50-5.

5

GER maintains that its claims are principally based on the March 2014 PPA, which contains a choice of law provision but does not contain a forum selection clause. The Complaint confirms that GER's claims arise out of the PPA, rather than the MHHA or NDA. (Rec. Doc. 1, Counts 1 and 2, p. 7-9). Shore does not appear to dispute the PPA as the contract applicable to GER's claims. (See Rec. Doc. 50-1, p. 14). Rather, Shore urges the Court to consider the totality of the four contracts. As such, Shore argues the forum selection clauses within the NDA and TCS should be incorporated into the PPA such that the case should be transferred to Allegheny, Pennsylvania.

## Law and Analysis

### I.  Applicability of the Forum Selection Clause.

Whether the NDA and TCS forum selection clauses can be incorporated into the PPA is a question of contract interpretation. The Court must first determine which law governs this issue of contract interpretation.

Ordinarily, the forum state's substantive law governs in diversity cases. *Hyde v. Hoffmann-La Roche, Inc.*, 511 F.3d 506, 510 (5th Cir. 2007). However, federal law governs as to the enforceability of forum selection clauses even in diversity cases. *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 301 (5th Cir. 2016), citing *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997). "When the 'interpretation' of a forum-selection clause is at issue in a diversity case, however,

we apply the forum state's choice-of-law rules to determine what substantive law governs." *Id*., citing *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770-71 (5th Cir. 2016). But which law governs the contractual interpretation necessary for the analysis of whether a forum selection clause even applies? The Fifth Circuit in *Barnett*, *supra*, framed the issue as one of "validity," rather than "enforceability," and acknowledged the friction between two alternative holdings: 1) "validity" and "enforceability" are synonymous, such that federal law applies to both inquiries; versus 2) validity is determined pursuant to the forum state's law, while enforceability is determined pursuant to federal law. The court ultimately punted, choosing not to resolve the question because the result was the same in that case under either conclusion. See also *Al Copeland Investments, L.L.C. v. First Specialty Ins. Corp.,* 884 F.3d 540, 543, fn. 2 (5th Cir. 2018), wherein the court again declined to definitively decide which law applies to determine validity.

Recently, the Fifth Circuit cited its earlier opinion in *Barnett* and then applied the contract interpretation rules of the forum state (Texas in that case) to determine that a forum selection clause was incorporated by reference into the primary contract. *Sierra Frac Sand, L.L.C. v. CDE Glob. Ltd.,* 960 F.3d 200, 203 (5th Cir. 2020). Although the parties in that case did not challenge the choice of law applied to the issue of validity, *Sierra Frac Sand* seems to support the conclusion that the forum state's law may permissibly be applied to the question of validity. Similarly,

7

the Fifth Circuit recently applied forum state (Louisiana) law to the question of whether a forum selection clause was incorporated by reference into a contract. *PCL Civil Constructors, Inc. v. Arch Ins. Co.,* 979 F.3d 1070, 1075 (5th Cir. 2020).

Further complicating matters in this case is the choice of law provisions in each of the four contracts which unequivocally impose application of Pennsylvania law. Because the parties agreed that the contracts would be interpreted pursuant to Pennsylvania law, and GER does not challenge the enforceability of the choice of law provisions, the Court shall interpret the contracts pursuant to Pennsylvania law.

One Pennsylvania federal court interpreting Pennsylvania contract law succinctly explained as follows:

> Pennsylvania rules of contract interpretation require the court to "ascertain and give effect to the intent of the contracting parties." *Murphy v. Duquesne Univ. of the Holy Ghost,* 565 Pa. 571, 590–591, 777 A.2d 418 (Pa.2001). Such intent is to be determined from reading the entire agreement as a whole and "when a writing is clear and unequivocal, its meaning must be determined by its contents alone." *Murphy,* 565 Pa. at 591, 777 A.2d 418 (citations omitted). If the terms of the agreement are unambiguous, the plain meaning of the terms of the agreement will be enforced. *Id.* If the terms are ambiguous, the agreement will be construed against the drafter. *See Gallagher v. Fidelcor, Inc.,* 441 Pa.Super. 223, 657 A.2d 31 (Pa.Super.Ct.1995) (citation omitted). "The practice of incorporating documents by reference has long been established in Pennsylvania." *Cable & Assocs. Ins. Agency, Inc. v. AMS Servs., Inc.,* 102 F. App'x 234, 237 (3d Cir.2004).
>
> "Incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship." *Bent Glass Design v.*

8

*Scienstry, Inc.*, No. CIV.A. 13–4282, 2014 WL 550548, at *10 (E.D.Pa. Feb.12, 2014) (quoting *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir.2003)).

*Carpenters Combined Funds, Inc., ex rel. Klein v. Kelly Sys., Inc.,* No. CIV.A. 14-1681, 2015 WL 3457872, at *6 (W.D. Pa. May 29, 2015)

Further, "[a]s a matter of contract law, incorporation by reference is generally effective to accomplish its intended purpose where ... the provision to which reference is made has a reasonably clear and ascertainable meaning." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646,* 584 F.3d 513, 534 (3d Cir. 2009), quoting *Bernotas v. Super Fresh Food Mkts., Inc.,* 816 A.2d 225, 231 (2002) (internal quotation marks omitted), *rev'd on other grounds,* 581 Pa. 12, 863 A.2d 478 (2004).

On its face, the March 2014 PPA does not contain a forum selection clause. Neither are the forum selection clauses of the NDA or TCS incorporated into the PPA. Although the PPA acknowledges the parties' extraneous agreements in the NDA and the MHHA (which does not contain a forum selection clause), the PPA states that the three agreements are subject to each other "where relevant." No evidence suggests the forum selection clause of the October 2013 NDA was relevant to a future PPA, executed in March 2014. Indeed, the NDA forum selection clause provides that "[a]ny legal action between the parties **concerning or involving this Agreement** shall be instituted only in the Commonwealth Court of Allegheny

9

County, PA." (Rec. Doc. 50-3, p. 3) (emphasis added). As Shore concedes, GER's claims are not based on the NDA.

Likewise, the forum selection clause within the April 2020 TCS cannot be incorporated into the PPA. Unlike the NDA, the TCS is not referenced or acknowledged in the PPA. Further, the TCS forum selection clause concerns "disputes arising from the sale of goods by Seller to Buyer or from Buyer's resale use of such goods…" (Rec. Doc. 50-5). Shore and Amazing's agreements memorialized in the PPA (later transferred to GER) were distinct from the ordinary sale of goods contemplated by Shore's invoices, with the attached TCS, to GER.

Shore relies on *Big & Little Oil, LLC v. Tanglewood Exploration, LLC* for the proposition that the NDA forum selection clause should be incorporated into the PPA; however, that case is factually distinguishable. The *Big & Little Oil* forum selection clause (which the defendant sought to incorporate) provided: "No proceeding related directly or indirectly to this Agreement shall be commenced, prosecuted or continued in any court other than [Texas]." *Big & Little Oil, LLC v. Tanglewood Expl. LLC*, No. 1813 WDA 2014, 2016 WL 5353291, at *2 (Pa. Super. Ct. July 25, 2016). The NDA's forum selection clause in this case unambiguously applied only to "this Agreement" (i.e. the NDA) and cannot be said to be relevant to a later executed PPA memorializing substantively different agreements.

The contracts are not ambiguous. The contracting parties agreed to resolve some, but not all disputes, in Pennsylvania. The NDA mandates litigation of disputes arising from that agreement in Pennsylvania. (Rec. Doc. 50-3, p. 3). The MHHA sanctions litigation in "any court of competent jurisdiction." (Rec. Doc. 50-12, p. 2). The PPA mandates only application of Pennsylvania law to the agreement's interpretation; it is silent as to a choice of forum. (Rec. Doc. 50-4, p. 3). Shore's strained interpretation of the PPA would render it ambiguous. Indeed, accepting Shore's argument would mandate a finding that the parties agreed to litigate in both Pennsylvania (under the NDA) and any court of competent jurisdiction (under the MHHA).[2] Absent convincing evidence that the parties agreed to resolve any disputes arising from the PPA in Pennsylvania, the Court will not incorporate forum selection clauses from extraneous contracts into the PPA.

---

[2] The consequence of Shore's position—that the parties agreed to litigate in both Pennsylvania (under the NDA) and any court of competent jurisdiction (under the MHHA)—is that the PPA could arguably be said to have a permissive forum selection clause. The Court does not find the PPA contains any forum selection clause; however, the Court notes that the §1404(a) transfer analysis in a case involving a permissive forum selection clause is the traditional analysis discussed below, as opposed to the modified analysis applicable only to mandatory forum selection clauses as discussed in *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 59, 134 S. Ct. 568, 579, 187 L. Ed. 2d 487 (2013). As discussed below, the traditional §1404 analysis does not support transfer.

## II. Transfer Analysis under §1404(a)

Having found the parties did not agree to litigation disputes arising from the PPA in Pennsylvania, the Court next addresses whether the case should be transferred pursuant to 28 U.S.C. §1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The movant must show good cause by showing "that the transferee venue is clearly more convenient." *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008). The Court must consider private interest and public interest factors.

### A. Private Interest Factors:

In determining whether transfer is proper under §1404(a), the court must consider the following private interest factors: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* quoting *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir.2004).

Shore did not present any argument suggesting that private interest factors weigh in favor of transfer. GER argues private interest factors weigh against transfer because the parties are equally capable of litigating in either Louisiana (as Shore

demonstrated since suit was filed in April 2020, without having filed a motion to transfer until September 2021) or Pennsylvania. The evidence in this case, which appears to consist of the parties' testimony and phone and email communications, can be presented without difficulty in this modern age of electronic courtrooms. The location of witnesses is a neutral consideration, since witnesses are likely dispersed equally between Pennsylvania (Shore's representatives) and Louisiana (GER's representatives). The Court further recognizes that, other factors being neutral, the plaintiff's choice of forum should be given deference. See *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 222 (5th Cir. 2000). Accordingly, the Court finds private interest factors weigh against transfer.

### B. Public Interest Factors:

The Court must next consider the following public interest factors:

(i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized controversies resolved at home; (iii) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (iv) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty.

*DTEX,* 508 F.3d at 794, citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947)*; In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d at 1162-63; and *Dickson Marine, Inc. v. Panalpina, Inc.,* 179 F.3d 331, 342 (5th Cir.1999). See also *In re Volkswagen AG,* 371 F.3d at 203.

13

In addressing public interest factors as required under the *Atlantic Marine* analysis,[3] Shore first argues that this Court is more heavily burdened by court congestion than that of the proposed transferee court in Pennsylvania. Having reviewed the statistical data in the Court's PACER system, the Court finds that the burden of this single case on either Court is inconsequential.

Shore next contends the dispute is not a localized controversy; however, the Court finds this factor is also neutral. The disputed issues arise out of the PPA, an agreement between Shore, a Pennsylvania company, and GER, a Louisiana company. Again, witnesses are likely equally disperse between Pennsylvania and Louisiana.

Shore next argues the third and fourth factors favor transfer, because the contracts call for application of Pennsylvania law. Although the third factor slightly favors transfer, the Court finds that this factor is not determinative. With the ease of access to modern electronic research tools, this Court is capable of researching and applying Pennsylvania law to the parties' contracts as well as considering any

---

[3] Shore's argument focused exclusively on the existence of a mandatory forum selection clause. The *Atlantic Marine* analysis is a modified §1404(a) analysis which applies in cases involving a valid and enforceable forum selection clause. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 59, 134 S. Ct. 568, 579, 187 L. Ed. 2d 487 (2013). Shore did not present an argument addressing the traditional §1404 analysis as the Court has found applies to this case. The Court assumes Shore's public interest argument would be the same.

conflict of laws issues that may arise. Indeed, as Shore admits, calling this case a "run-of-the-mill contract dispute,"[4] the legal issues are not complex or unique.

Finally, Shore cites population statistics for the proposition that a jury trial in this case would impose a greater burden on citizens within this District than that of the proposed transferee court in Pennsylvania, based on "adults available per case to serve on a jury." (Rec. Doc. 50-1, p. 13). The relevant determination is: the unfairness of burdening citizens in an unrelated forum with jury duty. *DTEX, supra.* This Court does not find that Louisiana is an unrelated forum. GER is a Louisiana company with its headquarters in this district. This factor does not favor transfer.

Considering all private interest and public interest factors, the Court finds that transfer is not warranted for *forum non conveniens* under §1404(a).

## **Conclusion**

For the reasons discussed herein, the Court recommends that Shore Corporation's Motion to Transfer under 28 U.S.C. §1404(a) or, Alternatively, Motion to Dismiss under *Forum Non Conveniens* (Rec. Doc. 50) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of

---

[4] Rec. Doc. 50-1, p. 11.

15

Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 1st day of February, 2022.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE