UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| GLOBAL ENVIRONMENTAL RESTORATION, INC. | CIVIL ACTION NO. 6:20-CV-00547 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| SHORE CORPORATION | MAG. JUDGE CAROLWHITEHURST |

RULING

Pending here is a Motion to Transfer Under 28 U.S.C. §1404(a) or, Alternatively, Motion to Dismiss Under *Forum Non Conveniens* filed by Defendant, Shore Corporation ("Shore") [Doc. No. 50].

On February 2, 2022, the Magistrate Judge issued a Report and Recommendation recommending that Shore's motion be denied [Doc. No. 70].

On February 17, 2022, Shore filed an objection to the Report and Recommendation [Doc. No. 77].  On March 2, 2022, Plaintiff Global Environmental Restoration, Inc. ("GER") filed a response to the objection [Doc. No. 83].

Having conducted a *de novo* review of the record in this matter, the Court DECLINES TO ADOPT the Report and Recommendation.  Shore's Motion to Dismiss Under *Forum Non Conveniens* [Doc. No. 50] is GRANTED.

## I.    FACTUAL BACKGROUND

GER, a Louisiana company, is a wholesaler, retailer, and distributor of specialized disinfectant products.  Shore, a Pennsylvania company, is a chemical manufacturer that manufactured GER's products.  GER filed this lawsuit in Louisiana against Shore alleging claims for breach of contract, conversion, and violation of the Louisiana Unfair Trade Practice

Act, after Shore allegedly failed to turn over formulas for certain products in accordance with a contract.

The genesis of this case goes back to the 1990's when Shore and another chemical retail and distribution company, Amazing Concepts, began a business relationship. Amazing Concepts was a Michigan-based company.

Sometime in 2013, Shore (the Pennsylvania company) and Amazing Concepts (the Michigan company) began discussions concerning their business relationship moving forward. On October 28, 2013, Shore and Amazing Concepts signed a Mutual Non-Disclosure Agreement (the "NDA") regarding non-disclosure of the companies' respective proprietary information, such as product formulas, test data, etc.  The NDA contained a forum selection clause identifying a state court forum in Allegheny County, Pennsylvania ("the Commonwealth Court of Allegheny County, PA.") as the appropriate forum for legal action [Doc. No. 50-3].

On January 13, 2014, Shore and Amazing Concepts entered into a Manufacturing and Hold Harmless Agreement (the "MHHA") which set forth the parties' arrangements regarding the development, purchase, and sale of products (such as permissions to manufacture, label, and ship products and obligations regarding EPA regulation compliance). The choice of law/venue provision states:

> The provisions of this Agreement shall be governed by Pennsylvania law, without regard to any conflict of law provisions… In the event any court of competent jurisdiction determines that any provision of this agreement is void or unenforceable, such finding shall not affect the applicability or enforceability of the remining provisions.

[Doc. No.50-12, p. 2]

On March 13, 2014, Shore and Amazing Concepts entered into a Product and Production Agreement and Purchase of Scheduled Products (the "PPA") wherein Shore transferred rights,

title, and interest in certain Scheduled Products to Amazing Concepts, and Amazing Concepts agreed to purchase them for a set price, payable over the following five years. The PPA explicitly acknowledges the earlier October 2013 NDA and January 2014 MHHA and states that the provisions of those agreements "where relevant, are subject to the provisions of this Agreement and this Agreement to those provisions." [Doc. No. 50-4, p. 1]. The PPA further states: "This Agreement will be interpreted under the laws of the Commonwealth of Pennsylvania."

Significantly, the PPA makes no other specification as to a choice of forum. [Doc. No. 50-4, p. 3].

GER (the Louisiana company) alleges that during this period it was contemplated that GER would acquire Amazing Concepts and step into its shoes under the PPA and that GER subsequently did purchase all of the assets of Amazing Concepts [Doc. No. 1, p. 5].  GER further alleges that Shore knew of this acquisition and approved, as evidenced by Shore continuing to do business with GER in place of Amazing Concepts in the following years [*Id*.].

Approximately one year later, on December 3, 2015, GER forwarded to Shore its own version of the original MHH which Shore and Amazing had executed.  This MHH was executed by GER on December 2, 2015, but was never executed by Shore [Doc. No. 50-8, p.4].   Attached to the email by which the MHH was forwarded to Shore was a Non-Disclosure Agreement ("the proposed NDA") which GER itself drafted, signed, and delivered to Shore.  The proposed NDA was almost identical to the original NDA between Shore and Amazing, including the presence of the exact same Allegheny County, Pennsylvania state court forum choice [Doc. No. 50-7, p.6]. It too was executed by GER on December 2, 2015, but was never executed by Shore [*Id*., p. 7].

3

Also relevant to the pending motion is an April 2020 Terms and Conditions of Sale ("TCS") attached to (or on the back of) a sales invoice for GER's purchase of certain products from Shore. The venue provision states: "Venue for any and all disputes arising from the sale of goods by Seller [Shore] to Buyer [GER] or from Buyer's resale use of such goods shall be resolved in a court of competent jurisdiction in Allegheny County, Pennsylvania" ... "PA law...shall apply to any dispute." [Doc. No. 50-5].

On September 9, 2021, Shore filed the pending Motion to Transfer Under 28 U.S.C. §1404(a) or, Alternatively, Motion to Dismiss Under *Forum Non Conveniens*, contending that this Court should transfer the present suit to the United States District Court, Western District of Pennsylvania, Pittsburgh Division, in Allegheny County, Pennsylvania pursuant to 28 U.S.C. 1404(a), or, in the alternative, this Court should dismiss this suit without prejudice, allowing Plaintiff GER to refile its claims in a state or federal court of their choosing in Allegheny County, PA pursuant to the doctrine of forum *non conveniens.*

More specifically, Shore contends that this Court should consider the totality of the contracts, and that the forum selection clauses within the NDA and/or the TCS should be incorporated into the PPA such that the case should be transferred to Allegheny, Pennsylvania [Doc. No. 50].

On September 30, 2021, GER filed an opposition contending that the March 2014 PPA, which contains a choice of law provision but does not contain a forum selection clause, forms the basis for its claim and that the NDA and/or TCS should not be incorporated into the PPA. Accordingly, GER asserts that this Court should maintain the case in a Louisiana court albeit while applying Pennsylvania law.

On February 2, 2022, the Magistrate Judge issued a Report and Recommendation which recommended that Shore's Motion be denied [Doc. No. 70].  The Magistrate Judge found that, because the choice of law provisions in each of the contracts unequivocally impose application of Pennsylvania law, the Court should interpret the contracts pursuant to Pennsylvania law. After analyzing the relevant Pennsylvania law, the Magistrate Judge further found that the forum selections clauses of the NDA and TCS should not be incorporated into the PPA, and, therefore, there was no agreement to resolve all disputes in a Pennsylvania forum.

On February 16, 2022, Shore timely filed an objection to the Magistrate Judge's Report and Recommendation [Doc. No. 77].   Shore contends that the Magistrate Judge erred in finding that the NDA and TCS forum selection clauses should not be incorporated into the PPA under Pennsylvania law.

On March 2, 2022, GER filed a response to Shore's objection, contending that the Report and Recommendation should be adopted by this Court.

The issues are fully briefed, and the Court is prepared to rule.

## II.   STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 72(3), this Court's review of the Report is *de novo*:

*(3)  Resolving Objections*.  The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

With respect to the Report, pursuant to 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a *de novo* determination of those portions of the [magistrate judge's] report [and recommendation] or specified proposed findings or recommendations to which objection is made." Section 636(b)(1) further states "[a] judge of the court may accept, reject or modify, in

whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *See also Hernandez v. Estelle*, 711 F.2d 619, 620 (5th Cir. 1983).

## III.     LAW AND ANALYSIS

### A.     Motion for Transfer Standards

While a request for a transfer from one federal court to another federal court based upon a forum selection clause is accomplished via Title 28 U.S.C. 1404(a), when the forum selection clause points to a state or foreign forum, parties may invoke the traditional remedy of dismissal available under the doctrine of *forum non conveniens*. *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Texas,* 571 U.S. 49, 59 (2013). But, "because both 1404(a) and the *forum non conveniens* doctrine...entail the same balancing-of-interests standard, courts should evaluate a forum selection clause pointing to a nonfederal forum [such as in the NDA] in the same way that they evaluate a forum selection clause pointing to a federal forum [such as in the TCS]." *Atl. Marine*, 571 U.S. 49 at 61.

Therefore, whether the Court looks to the NDA's state forum selection or the TCS' state or federal forum selection, the analysis remains the same. And valid forum selection clauses, regardless of the selected forum, should be "given controlling weight in all but the most exceptional cases." *Id*., at 62.

Where the parties have entered into a contract with a valid forum selection clause, the plaintiff's choice of forum merits no weight because the plaintiff has effectively already exercised its choice in the contract and consented to the identified forum. *Id*., at 63. Similarly, a court need not consider the parties' private interests, which are already expressed in the contract, but instead "may consider arguments about public-interest factors only." *Id*., at 64. But even as

6

to public-interest factors it has been recognized that "those factors will rarely defeat a transfer motion [and so] the practical result is that forum selection clauses should control except in unusual cases." *Id.*

"When the parties have agreed to a valid forum selection clause, a district court should ordinarily transfer the case to the forum specified in that clause" [or dismiss said case without prejudice for a state forum] absent "extraordinary circumstances unrelated to the convenience of the parties. . ." *Id.*, at 62.

In order to effectuate a request for transfer or dismissal the movant must first show that the clause(s) in question is mandatory in nature. *Stratos Enterprises v. Spirit Halloween Superstores*, 2016 WL 8188665, p.3.; *Waste Mgmt. of Louisiana v. Jefferson Parish*, 594 Fed. App'x. 820 (5th Cir. 2014). Second it must be shown that the clause(s) is valid/enforceable, although the presumption is that such clauses are in fact valid/enforceable. *Barnett v. DynCorp Int'l, LLC,* 831 F.3d 296, 301 (5th Cir. 2016). Next the Court must weigh certain public interest factors, but with the knowledge that only truly exceptional public interest factors will rise to such a level as to trump the strong policy in favor of enforcing the forum selected by the parties. *Id.*, at p. 301. Finally, the Court must find that the claims of the lawsuit are covered by the forum selection clauses and that there is an available and adequate forum in which the dismissed or transferred party can litigate its claims. *Braspetro Oil Services Co. v. Modec (USA)*, 240 Fed. App'x. 612, 616; *Impact Recovery Systems v. Liddell Bros., Inc*., 2016 WL 8257050, 8-9.

### B.     Analysis

#### 1.     Mandatory Language

As indicated above, in order for a Court in the Fifth Circuit to apply the relaxed standards for transfer or dismissal when the basis is a forum selection clause, the Court must first find that

the forum selection clause contains mandatory, as opposed to permissive, language. *Waste Mgmt. of Louisiana v. Jefferson Parish*, 594 Fed. App'x. 820 (5th Cir. 2014). Both the TCS and the NDA contain forum selection clauses which dictate that any disputes related to the agreements "shall be" instituted and/or resolved in Allegheny County, PA (state or federal court for the TCS, but state court only for the NDA). Given the clearly exclusive language used in the clauses, the Court recognizes both clauses as being mandatory, assuming they are incorporated into the PPA.

### 2.    Enforceability/Validity

There is no dispute that GER's claims relate to the PPA.  GER's core claims are that it paid a purchase price in its entirety for rights to the formulation of certain products, that Shore accepted and retained the purchase price payment, but that Shore refused to provide the rights that were purchased.

Whether the NDA and/or TCS forum selection clauses can be incorporated into the PPA is a question of contract interpretation. There is no disagreement that the choice of law provisions in each of the contracts impose application of Pennsylvania law to any disputes between the parties.

Where the parties differ is whether an analysis under applicable Pennsylvania law results in the conclusion that the forum selection clauses in the NDA and/or TCS specifying a Pennsylvania forum should be incorporated into the PPA which specified no particular forum.

"The practice of incorporating documents by reference has long been established in Pennsylvania." *Cable & Assocs. Ins. Agency, Inc. v. AMS Servs., Inc*., 102 F. App'x 234, 237 (3d Cir.2004). "Incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and

incorporation of the document will not result in surprise or hardship." *Bent Glass Design v. Scienstry, Inc.*, No. CIV.A. 13–4282, 2014 WL 550548, at \*10 (E.D.Pa. Feb.12, 2014) (quoting *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir.2003)).

Further, "[a]s a matter of contract law, incorporation by reference is generally effective to accomplish its intended purpose where ... the provision to which reference is made has a reasonably clear and ascertainable meaning." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 534 (3d Cir. 2009), quoting *Bernotas v. Super Fresh Food Mkts., Inc*., 816 A.2d 225, 231 (2002) (internal quotation marks omitted), rev'd on other grounds, 581 Pa. 12, 863 A.2d 478 (2004).

Shore relies on *Big & Little Oil, LLC v. Tanglewood Exploration, LLC*, No. 1813 WDA 2014, 2016 WL 5353291 (Pa. Super. Ct. July 25, 2016) for the proposition that, under Pennsylvania law, the NDA and/or TCS forum selection clauses should be incorporated into the PPA.

In the *Big & Little Oil* case, the Pennsylvania Superior Court cited the principle that "[I]t is a general rule of law in the Commonwealth that where a contract refers to and incorporates the provisions of another both shall be construed together." [*Id*., \* 4]. Shore argues that such is the case here because the PPA refers to and incorporates the NDA, which contains a forum selection clause [Doc. No. 77-3]. As noted above, the PPA explicitly acknowledges the earlier October 2013 NDA, and the January 2014 MHHA and states that the provisions of those agreements "where relevant, are subject to the provisions of this Agreement and this Agreement to those provisions." [Doc. No. 50-4, p. 1].

9

The Superior Court goes on to say that "[w]here several instruments are made as part of one transaction they will be read together, and each will be construed with reference to the other: and this is so although the instruments may have been executed at different times and do not in terms refer to each other." [*Big and Little*, * 4].

Shore asserts that, although the contracts in the present case were each executed roughly two months apart, the PPA refers to and incorporates the NDA, and the contracts were executed in procession, each closely following the other, and with the clear intent to govern the parties entire business relationship concerning the proprietary rights and obligations, manufacture, sale of products, and sale of formulas related to the property that are at the heart of this suit.

This Court agrees.  The first agreement to be executed was in fact the NDA, on October 28, 2013. The NDA recites the parties' history of doing business by verbal agreement and declares that the written NDA "formalizes the parties' confidentiality and non-disclosure obligations involved in the ongoing development, manufacture, purchase and sale of both Registered Products and those products not registered" [Doc. No. 77-3, p. 1].

The MHH, signed only two and a half months later, on January 13, 2014, also recited the parties' history of doing business by verbal agreement and then declared "[t]he purpose of this Agreement is to formalize the parties' arrangements and obligations for future business involving the development, purchase and sale of products registered with the EPA." [Doc. No. 77-4, p. 1].

Roughly two months later, with the parties having formalized the parties' respective proprietary rights and "ongoing," "future business" obligations related to both the registered and unregistered products by executing the NDA and MHH, the parties then executed the PPA on

10

March 13, 2014, which "sets forth the terms and conditions under which these arrangements shall continue." [Doc. No. 77-2, p. 1].

GER argues that this case is factually distinguishable from *Big and Little Oil*, in that the forum selection clause in *Big & Little Oil* provided that "No proceeding related directly or indirectly to this Agreement shall be commenced, prosecuted, or continued in any court other than [Texas]." GER contends that, in contrast, the NDA's forum selection clause applied to "Any legal action between the parties concerning or involving this Agreement", referring solely to the NDA. GER asserts that, by not specifying that the forum selection clause would also apply to those proceedings indirectly relating to the agreement, the parties have shown their intent that such a clause would only apply to disputes arising out of the NDA itself. As such, the NDA's forum selection clause is not relevant to any agreements subsequently executed by the parties, according to GER.

The Court acknowledges that the wording for the forum selection clause in the NDA is not exactly the same as that in *Big & Little Oil*. However, the phrases "related directly or indirectly" and "concerning or involving" are equally broad enough in scope to be applied identically to the relevant analysis in both cases.

Further, the Court notes that, approximately one year later, on December 2, 2015, GER drafted, signed and presented to Shore its own version of the NDA which included the exact same Allegheny County, PA forum selection clause as the original NDA [Doc. No. 50-7, p. 6].

For these reasons, the Court finds that the PPA refers to and incorporates the NDA, including its forum selection clause.

With regard to the TSC, the PPA states that "All sales of Scheduled Products to [GER] shall be subject to Shore's Terms and Conditions of Sale as included on invoices rendered by

Shore." [Doc. No. 77-2, p. 2]  As indicated above, the April 2020 Terms and Conditions of Sale ("TCS") attached to (or on the back of) a sales invoice for GER's purchase of certain products contained a venue provision which states: "Venue for any and all disputes arising from the sale of goods by Seller [Shore] to Buyer [GER] or from Buyer's resale use of such goods shall be resolved in a court of competent jurisdiction in Allegheny County, Pennsylvania" ... "PA law...shall apply to any dispute." [Doc. No. 50-5].

GER argues that this is not a dispute between the parties relating to the sale of goods and that its claims are not related to the Terms and Conditions of Sale or the forum selection clause therein.  Therefore, any forum selection clause in the TCS is irrelevant.

The Court finds that Shore has not established that the forum selection clause in the TCS is applicable to this dispute.  Accordingly, to the extent that Shore moves to transfer under Title 28 U.S.C. §1404(a), Shore's motion should be DENIED.

On the other hand, the Court finds that, under Pennsylvania law, the NDA forum selection clause should be incorporated into the PPA. The Court thus concludes that there is a mandatory, valid, and enforceable forum selection clause here.

### 3.    Public Interest Factors

The existence of a mandatory, valid and enforceable forum selection clause means that the Court affords no weight to plaintiff's choice of forum and considers only the following public-interest factors: (1) administrative difficulties flowing from court congestion; (2) local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. But those factors justify refusal to enforce a forum

selection clause only in "truly exceptional cases." *Al Copeland Investments v. First Specialty Ins. Corp*., 884 F.3d 540, 545 (5th Cir. 2018).

With regard to the first public interest factor, administrative difficulties flowing from court congestion, Shore argues that this Court is more heavily burdened by court congestion than that of the proposed transferee court in Pennsylvania. The Magistrate Judge reviewed the statistical data in the Court's PACER system and found that the burden of this single case on either Court is inconsequential.  This Court agrees.

As for the second factor, whether the dispute is a "localized controversy," this is a dispute arising out of contracts that were initially enacted between a Michigan company, Amazing Concepts, and a Pennsylvania company, Shore. GER was aware of this when it acquired Amazing Concepts.  Furthermore, the products which GER alleges that Shore is manufacturing with GER's formula continue to be manufactured in Pennsylvania, which is also where the physical formula itself is located. The products are available for sale across the nation and the world. Thus, this does not appear to be a "localized controversy" with respect to Louisiana.

The third and forth factors favor transfer.  It is undisputed that the contracts call for application of Pennsylvania law.  Although this Court would be capable of researching and applying Pennsylvania law to the parties' contracts, a Pennsylvania court would obviously be much more familiar with Pennsylvania law.  Further, as the laws of Louisiana would not follow the case to Pennsylvania, the transfer or dismissal of the case would eliminate whatever chance there may be for unnecessary problems with conflicts of laws.

Finally, with regard to the fifth factor, the fairness of burdening citizens in an unrelated forum with jury duty, Shore asserts this factor favors transfer because there is statistically a larger jury pool in Pennsylvania than in Louisiana. However, the issue is whether it is unfair to

burden citizens in an unrelated forum with jury duty. Since GER is a Louisiana company, this factor only slightly favors Pennsylvania.

After considering the public interest factors, this Court concludes that they provide no justification for refusing to enforce the forum selection clause applicable here.

### 4.      Available Alternative Forum

By signing a contract with a valid forum selection clause, the parties consented to submit to the jurisdiction of the court indicated in that clause. *Impact Recovery Systems v. Liddell Bros., Inc.,* 2016 WL 8257050, 8-9. The parties avail themselves of, and make themselves available to, the cited forum.

Here, GER's predecessor company, Amazing Concepts, availed itself of the Pennsylvania forum indicated in the NDA by consenting to it, and the provision was incorporated into the PPA. Additionally, GER included the exact same forum selection clause in its own version of the NDA.

Further, there is nothing to indicate that Pennsylvania is without sufficient rule of law or fair judicial process as would render it "inadequate" as a forum to hear the present dispute. Therefore, this Court finds that there is an available alternative forum in Pennsylvania.

## IV.      CONCLUSION

For the reasons set forth above, the Court DECLINES TO ADOPT the Report and Recommendation of the Magistrate Judge [Doc. No. 70]. This Court finds that, under Pennsylvania law, the forum selection clause in the NDA was incorporated into the PPA which is at the center of the present dispute. Accordingly,

IT IS ORDERED, ADJUDGED, AND DECREED that, to the extent Shore moves to dismiss this matter under *Forum Non Conveniens* [Doc. No. 50], the motion is GRANTED, and

this matter is hereby DISMISSED WITHOUT PREJUDICE, allowing Plaintiff GER to refile its claims in a state court forum in Allegheny County, Pennsylvania ("the Commonwealth Court of Allegheny County, PA.").

IT IS FURTHER ORDERED that, to the extent Shore moves to transfer this matter under Title 28 U.S.C. §1404(a) pursuant to the TCS, the motion is DENIED.

Monroe, Louisiana, this 8th day of March 2022.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE